# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| ASIA MARTIN, et al., | |
| Plaintiffs, | Case No. 1:25-cv-02211 |
| v. | Judge Matthew F. Kennelly |
| FEDERAL HOME LOAN MORTGAGE CORPORATION AND ANSONIA PROPERTY MANAGEMENT, LLC, as agent. | |
| Defendants. | |

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO STAY PROCEEDINGS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................... 1

I.  PROCEDURAL BACKGROUND ................................................ 2

    A.  Litigation Timeline .................................................... 2

    B.  The Nature of Concurrent State Buildings Court Litigation ..... 5

ARGUMENT ................................................................................ 7

II.  CONGRESSIONAL INTENT AND EQUITABLE PRINCIPLES RENDER ABSTENTION INAPPROPRIATE ............................. 7

    A.  12 U.S.C. § 1452(f)(2–3) Warrants Denial of Defendants' Motion .................................................................... 7

    B.  The Doctrine of Judicial Estoppel and Principles of Equity Warrant the Denial of Defendants' Motion ...................... 9

III.  NEITHER *BURFORD* NOR *COLORADO RIVER* WARRANT ABSTENTION .................................................... 11

    A.  *Burford* abstention is improper in the absence of complex questions of unsettled state law and absent any interfere with any specialized state administrative procedure ................... 12

        1.  *The claims in the present lawsuit are not properly classified as complex questions of unsettled state law* ................... 12

        2.  *The federal case will not impede on a special state forum* ........ 14

    B.  *Colorado River* Does Not Warrant Abstention ................ 16

        1.  *The parties are not parallel* .................................. 16

        2.  *The claims are not parallel* ................................. 18

        3.  *Even if the cases are parallel, application of the Colorado River factors demonstrates a lack of exceptional circumstances warranting abstention* ............................... 23

i.      Whether the state court has assumed jurisdiction over property .......................................................................... 24

ii.     The inconvenience of the federal forum ........................... 25

iii.    The desire to avoid piecemeal litigation .......................... 25

iv.     The order in which jurisdiction was obtained and the relative progress of state and federal proceedings .......... 26

v.      The sources of governing law ........................................... 26

vi.     The adequacy of state court action to protect the federal plaintiff's rights ................................................................ 27

vii.    The presence or absence of concurrent jurisdiction ........ 27

viii.   The availability of removal ............................................... 28

ix.     The federal suit is not contrived or vexatious ................. 28

**CONCLUSION** ..................................................................... 29

## TABLE OF AUTHORITIES

Supreme Court Cases

*Colorado River Conservation Dist. v. U.S.*,
　　424 U.S. 800 (1976) ...................................................................................*passim*

*County of Allegheny v. Frank Mashuda Co.*,
　　360 U.S. 185 (1959) ............................................................................................. 11

*Holland v. Fla.*,
　　560 U.S. 631 (2010) ............................................................................................. 11

*Holmberg v. Armbrecht*,
　　327 U.S. 392 (1946) ............................................................................................. 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　　460 U.S. 1 (1983) ......................................................................................*passim*

*New Hampshire v. Maine*,
　　532 U.S. 742 (2001) ............................................................................................... 9

*New Orleans Pub. Serv. v. Council of City of New Orleans*,
　　491 U.S. 350 (1989) ...................................................................................*passim*

*Pegram v. Herdrich*,
　　530 U.S. 211, (2000) .............................................................................................. 9

*Quackenbush v. Allstate Ins. Co.*,
　　517 U.S. 706 (1996) ............................................................................................. 12

Federal Appellate Court Cases

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*,
　　250 F.3d 510 (7th Cir. 2001) ..................................................... 12, 20, 21, 23

*Adkins v. VIM Recycling*,
　　644 F.3d 483 (7th Cir. 2011) .....................................................................*passim*

*AXA Corporate Solutions v. Underwriters Reins. Corp.*,
　　347 F.3d 272 (7th Cir. 2003) ............................................................................. 23

*Braid v. Stilley,*
    142 F.4th 956 (7th Cir. 2025) ........................................................................ 23

*Clark v. Lacy,*
    376 F.3d 682 (7th Cir. 2004) ............................................................. 16, 18, 27

*Freed v. JPMorgan Chase Bank, N.A.,*
    756 F.3d 1013 (7th Cir. 2014) .................................................................. 17, 28

*Hammer v. United States HHS,*
    905 F.3d 517 (7th Cir. 2018) ................................................................ 8, 13, 14

*Huon v. Johnson & Bell, Ltd.,*
    657 F.3d 641 (7th Cir. 2011) ............................................................. 16, 23, 25

*In re Airadigm Commc'ns, Inc.,*
    616 F.3d 642 (7th Cir. 2010) ........................................................................ 9

*Int'l Coll. of Surgeons v. City of Chicago,*
    153 F.3d 356 (7th Cir. 1998) ....................................................................... 14

*Li v. Fresenius Kabi USA, LLC,*
    110 F.4th 988 (7th Cir. 2024) ...................................................................... 13

*Loughran v. Wells Fargo Bank, N.A.,*
    2 F.4th 640 (7th Cir. 2021) ......................................................................... 28

*Lumen Constr., Inc. v. Brant Constr. Co.,*
    780 F.2d 691 (7th Cir. 1985) ................................................................*passim*

*Vega v. Chi. Bd. of Educ.,*
    109 F.4th 948 (7th Cir. 2024) ...................................................................... 11

*U.S. ex rel. Chandler v. Cook County,*
    277 F.3d 969, 980 (7th Cir. 2002) ................................................................ 12

Federal District Court Cases

*Antwine v. Ansonia Prop. Mgmt., LLC,*
    No. 1:25-cv-04571 (N.D. Ill.) ......................................................................... 4

*Brown v. Fed. Home Loan Mortg. Corp.,*
    No. 1:25-cv-03965 (N.D. Ill. Apr. 11, 2025) ...................................................... 3

*Davis v. Fed. Home Loan Mortg. Corp.*,
    No. 1:25-cv-03972 (N.D. Ill. Apr. 11, 2025) ....................................................... 3

*Evans v. Fed. Home Loan Mortg. Corp.*,
    No. 1:25-cv-03970 (N.D. Ill. Apr. 11, 2025) ....................................................... 3

*Herron v. Gold Std. Baking, Inc.*,
    2023 U.S. Dist. LEXIS 221740 (N.D. Ill. 2023)................................................. 17

*Kennedy v. Vill. of Oak Lawn*,
    No. 99 C 7917, 2000 WL 1721044 (N.D. Ill. Nov. 16, 2000) ........................... 15

*Schmude v. Sheahan*,
    312 F. Supp. 2d 1047 (N.D. Ill. 2004)............................................................... 27

*The Medicines Co. v. Mylan Inc.*,
    No. 11-CV-1285, 2014 WL 1979261 (N.D. Ill. May 15, 2014)......................... 11

*Veritas v. Nowak*,
    2022 U.S. Dist. LEXIS 233074 (N.D. Ill. 2022)................................................ 17

*Weinstock v. Islamic Republic of Iran*,
    No. 23 C 2824, 2025 WL 2257076 (N.D. Ill. Aug. 7, 2025) ............................... 8

*Weston v. DB Priv. Wealth Mortg., Ltd.*,
    2023 U.S. Dist. LEXIS 131977 (N.D. Ill. 2023)........................................ 16, 22

State Supreme Court Cases

*Glasoe v. Trinkle*,
    107 Ill.2d 1 (1985) ........................................................................................... 20

*Jack Spring, Inc. v. Little*,
    50 Ill. 2d 351 (1972) ......................................................................................... 19

State Appellate Court Cases

*City of Bloomington v. Bible Truth Crusade*,
555 N.E.2d 117 (Ill. App. 4th Dist. 1990).......................................................... 6, 7, 28

*City of Chicago v. RN Realty, L.P.*,
    357 Ill. App. 3d 337 (1st Dist. 2005)................................................................. 19

*S. Austin Realty Ass'n, v. Sombright*,

47 Ill.App.3d 89 (1997) ........................................................................... 20

*Spanish Court Two Condo. Ass'n v. Carlson*,
   2014 IL 115342 ................................................................................... 20

State Circuit Court Cases

*Antwine v. Ansonia Prop. Mgmt., LLC*,
   No. 2025-CH-04044 (Cir. Ct. Cook Cnty., Ill. Apr. 10, 2025) ....................... 3, 4

*Ansonia Prop. Mgmt., LLC v. Baldwin*,
   No. 2025-M1-706330 ............................................................................. 4

*Ansonia Prop. Mgmt., LLC v. Oliver*,
   No. 2025-M1-706294 ........................................................................... 4, 5

*Ansonia Prop. Mgmt., LLC v. Scott*,
   No. 2025-M1-706303 ............................................................................. 4

*Brown v. Fed. Home Loan Mortg. Corp.*,
   No. 2025-M1-106433 (Cir. Ct. Cook Cnty., Ill. Mar. 4, 2025) ......................... 3

*Davis v. Fed. Home Loan Mortg. Corp.*,
   No. 2025-M1-106436 (Cir. Ct. Cook Cnty., Ill. Mar. 4, 2025) ......................... 3

*Evans v. Fed. Home Loan Mortg. Corp.*,
   No. 2025-M1-106479 (Cir. Ct. Cook Cnty., Ill. Mar. 4, 2025) ......................... 3

*Lucas v. Fed. Home Loan Mortg. Corp.*,
   No. 1:25-cv-02360 (N.D. Ill., Mar. 5, 2025) ............................................... 3

Rules and Statutes

12 U.S.C. § 1452(f) .......................................................................... 9, 13, 26

24 C.F.R. 5.703 ...................................................................................... 13

28 U.S.C. § 1442 ...................................................................................... 8

28 U.S.C. § 1452(f)(2) ........................................................................... 8, 29

29 U.S.C. § 794a(a)(2) ............................................................................. 16

42 U.S.C. § 3604(f) ................................................................................. 23

42 U.S.C. § 3613 ........................................................................................... 16

65 Ill. Comp. Stat. Ann. 5/11-31-2 .......................................................... 15, 16

735 ILCS 5/9-106 ......................................................................................... 20

765 ILCS 721/10 ........................................................................................... 16

775 ILCS 60/20 ............................................................................................. 16

815 ILCS 505/2 ............................................................................................. 16

Chi., Mun. Code § 14A-3-302 ................................................................. 16, 19

Chi. Mun. Code § 5-12-110(e) ..................................................................... 15

Ill. S. Ct. R. 201(h) ........................................................................................ 7

Miscellaneous Authorities

City of Chicago Department of Buildings, "Building Code Violation Enforcement
    Process," www.chicago.gov/city/en/depts/bldgs/provdrs/inspect/svcs/building-
    code-violation-enforcement-process.html ......................................................... 6

HUD Handbook 4350.3,
    https://www.hud.gov/sites/documents/43503hsgh.pdf ............................. 13, 14

Tim A. Baker, *Sizing up Settlement: How Much Do the Merits of a Dispute Really
    Matter*, 24 HARV. NEGOT. L. REV. 253, 262-3, 270 (Spring 2019) .................... 29

Plaintiffs, through their respective attorneys of record, jointly submit the following Response in Opposition to Defendants' Joint Motion to Stay Proceedings.

## **INTRODUCTION**

Abstention here is inappropriate for a variety of reasons. First, the Court should deny the Motion before even addressing the details of Defendants' argument. For one, Congressional intent trumps abstention doctrine, and Congress has made it abundantly clear that federal courts should readily adjudicate cases involving Freddie Mac even in the face of otherwise applicable abstention doctrines. Additionally, under the judicial estoppel doctrine, this case should remain in federal court. Freddie Mac removed and consolidated this case from state to federal court citing the propriety of the federal forum, only to then ask that this Federal Court stay these proceedings in deference to state court.

Next, even if the Court must reach the specific abstention doctrines raised by Defendants, abstention is improper under *Burford* and *Colorado River*. *Burford* abstention is inappropriate because the state of Illinois does not seek to concentrate buildings conditions issues—not to mention the myriad other issues raised in Plaintiffs' Complaint—within a specialized court. Even if it did, the Buildings Court is not such a forum. Further, Plaintiffs' Complaint does not turn on difficult unresolved questions of state law, but rather largely focuses on matters of federal interest.

*Colorado River* abstention is also inappropriate. First, the claims are not parallel. The parties are not parallel as no Plaintiff here has appeared in the state

1

Buildings Court case[1], and Plaintiffs' pursuit of this litigation does not parallel the Tenant Association's interest as intervenor in the Buildings Court case. The claims are not parallel as the Buildings Court cannot, and does not seek to, resolve Plaintiffs' claims and the facts underlying them. Second, even if the cases are parallel, the *Colorado River* factors do not demonstrate exceptional circumstances warranting such an exceptional remedy.

Instead of squarely addressing these issues, in many instances, Defendants merely mischaracterize the facts in service of their argument. For example, Defendants largely hang their hat on the apparent impropriety of this Court adjudicating Plaintiffs' requests for injunctive and declaratory relief. To illustrate their point, Defendants criticize Plaintiffs' Count VIII (breach of lease for violating the organizing rights of tenants) for "again demanding both preliminary and permanent injunctions to repair issues pending in the Building Court." Defs.' Mem. Supp. Mot. Stay. 16, ECF No. 33. However, Plaintiffs do not make such a request for injunctive relief in Count VIII or elsewhere. This is indicative of Defendants' approach – inaccurately homogenizing Plaintiffs' Complaint and mischaracterizing the various proceedings at issue to conveniently match their arguments.

I. **PROCEDURAL BACKGROUND**

A. **Litigation Timeline.**

1. In early March 2025, the Bluhm Legal Clinic at Northwestern Pritzker School of Law filed two cases in federal court—the above-captioned case on behalf of Asia

---

[1] The primary concurrent state litigation discussed by Defendants, 2021-M1-400069 in the Circuit Court of Cook County, First District Municipal Department, will be referred to as the "Buildings Court case" or the like and the venue will be referred to as the "Buildings Court."

Martin followed by *Lucas v. Fed. Home Loan Mortg. Corp.*, No. 1:25-cv-02360 (N.D. Ill., filed Mar. 5, 2025) on behalf of six additional Plaintiffs: Cora Lucas, Ella Bell, Angelique Funches, Melvin Green and Rosilyn Sims. The civil cover sheet for the latter case listed Asia Martin's case as related. ECF No. 2.

2. On March 4, 2025, the Shriver Center on Poverty Law filed three separate small claims cases in state court on behalf of Plaintiffs Laprena Brown, Lequita Davis, and Arthur Evans. *Brown v. Fed. Home Loan Mortg. Corp.*, No. 2025-M1-106433 (Cir. Ct. Cook Cnty., Ill. Mar. 4, 2025); *Davis v. Fed. Home Loan Mortg. Corp.*, No. 2025-M1-106436 (Cir. Ct. Cook Cnty., Ill. Mar. 4, 2025); *Evans v. Fed. Home Loan Mortg. Corp.*, No. 2025-M1-106479 (Cir. Ct. Cook Cnty., Ill. Mar. 4, 2025).

3. On April 10, 2025, Beyond Legal Aid filed a single action for declaratory relief on behalf of fifteen residents who had received tenancy-termination notices, naming Freddie Mac and Ansonia Property Management, LLC as defendants. *Antwine v. Ansonia Prop. Mgmt., LLC*, No. 2025-CH-04044 (Cir. Ct. Cook Cnty., Ill. Apr. 10, 2025).

4. On April 11, 2025, Freddie Mac filed notices of removal in the Northern District of Illinois for the Shriver Center's small-claims actions—*Brown*, *Davis*, and *Evans*—removing each to federal court where they were docketed as Nos. 1:25-cv-03965, 1:25-cv-03972, and 1:25-cv-03970. *See* Notice of Removal, *Brown v. Fed. Home Loan Mortg. Corp.*, No. 1:25-cv-03965 (N.D. Ill. Apr. 11, 2025), ECF No. 1; Notice of Removal, *Davis v. Fed. Home Loan Mortg. Corp.*, No. 1:25-cv-03972 (N.D.

Ill. Apr. 11, 2025), ECF No. 1; Notice of Removal, *Evans v. Fed. Home Loan Mortg. Corp.*, No. 1:25-cv-03970 (N.D. Ill. Apr. 11, 2025), ECF No. 1.

5. On April 14, 2025, Freddie Mac asked this Court to consolidate the above-captioned case with the three recently removed Shriver Center actions. *See* Mot. to Consolidate, ECF No. 12.

6. On April 15, 2025, Plaintiff Asia Martin requested that the *Lucas* case be reassigned to this courtroom to proceed alongside *Martin*. Freddie Mac did not object. *See* Mot. to Reassign, ECF No. 13.

7. On April 17, 2025, Ansonia—acting as Freddie Mac's property manager—filed three separate eviction actions in the Circuit Court of Cook County against Plaintiffs Kwana Baldwin, Teresa Oliver, and Laila Scott for alleged nonpayment of rent. *Ansonia Prop. Mgmt., LLC v. Baldwin*, No. 2025-M1-706330; *Ansonia Prop. Mgmt., LLC v. Oliver*, No. 2025-M1-706294; *Ansonia Prop. Mgmt., LLC v. Scott*, No. 2025-M1-706303.

8. On April 28, 2025, Freddie Mac removed the state court declaratory-relief action filed by Beyond Legal Aid—*Antwine v. Ansonia Prop. Mgmt., LLC*, No. 2025-CH-04044—to the U.S. District Court for the Northern District of Illinois, where it was docketed as No. 1:25-cv-04571. *See* Notice of Removal, *Antwine v. Ansonia Prop. Mgmt., LLC*, No. 1:25-cv-04571 (N.D. Ill.), ECF No. 1.

9. On May 5, 2025, the Parties in the instant case filed a joint status report in which the Parties proposed a discovery and dispositive motions schedule. The Parties

4

also proposed that Plaintiffs have 60 days to file a Consolidated Amended Complaint. ECF No. 20.

10.    On May 8, 2025, this Court entered a minute entry setting forth a litigation schedule and order that "an amended consolidated complaint (preferably one covering all cases) is to be filed by 7/8/2025" by Plaintiffs. ECF No. 21.

11.    On July 8, 2025, Plaintiffs filed a single Consolidated Amended Complaint. Beyond the addition of claims for the Illinois Consumer Fraud and Deceptive Practices Act and the Illinois Human Rights Act and the elimination of two RLTO counts, the claims in this amended complaint did not differ significantly from the original respective claims pled by Plaintiffs. ECF No. 23.

12.    On July 30, 2025, Beyond Legal Aid, who had appeared in the three state court eviction actions filed on April 17, filed a Motion to Consolidate those cases. Defs.' Mot. to Consolidate, *Ansonia Prop. Mgmt., LLC v. Oliver*, No. 2025-M1-706294.

13.    On August 20, 2025, the state court granted the Motion to Consolidate over Ansonia's objections. Briefing Schedule Order, *Ansonia Prop. Mgmt., LLC v. Oliver*, No. 2025-M1-706294 (referencing Judge Wright's Aug. 20, 2025 Consolidation Order). The Eviction Tenants' Motions to Dismiss are filed and set for hearing on November 25, 2025.

14.    On September 17, 2025, Defendants jointly filed the instant Motion to Stay.

    **B.    The Nature of Concurrent State Buildings Court Litigation.**
    It is concededly difficult to accurately and thoroughly convey the nature of a years long Buildings Court proceeding based on court orders, caselaw, online sources and the few transcribed hearings. In a sense, to gain a holistic understanding of those

proceedings, 'you had to be there.' Still, a few general observations about the Buildings Court case will hopefully help illustrate why the Buildings Court cannot resolve this case and why the Buildings Court does not provide an adequate forum for Plaintiffs to adjudicate their claims.

Buildings Court proceedings are narrow in scope—almost exclusively dedicated to bringing buildings into compliance with the municipal building code.[2] The process does not involve adjudication of even closely ancillary matters. *See, e.g., City of Bloomington v. Bible Truth Crusade*, 555 N.E.2d 117, 119 (Ill. App. 4th Dist. 1990). It is thus telling that the only Buildings Court relief noted in Defendants' Motion is the resolution of alleged code violations. The Buildings Court does not assess the harm or relief to individual residents. It certainly does not entertain resident claims about the warranty of habitability, lease terms, retaliation, the accuracy of rent balances, termination notices, civil rights laws or unfair business practices. *See id.*

The Buildings Court case does not seek to exhaustively assess or address deficiencies in the building. It is anchored to monthly 1–2 hour inspections and the prosecutorial discretion of the City. *See supra* n. 1. The vast majority of Plaintiffs' units have not been viewed during these inspections, and defects in these units are not included in the City's Complaint. *Compare* Exhibit 1 (City Complaint) *with* Plaintiffs' Compl., ECF 23, ¶¶ 9-23. The City filed the operative complaint in early

---

[2] City of Chicago Department of Buildings, "Building Code Violation Enforcement Process," p. 2 (*see* "Circuit Court" section), found at www.chicago.gov/city/en/depts/bldgs/provdrs/inspect/svcs/building-code-violation-enforcement-process.html, last visited Oct. 22, 2025.

2024, and the process is dedicated to resolving the listed defects as alleged. If a defect arose since the filing of that complaint, or if a previous defect was considered resolved and thus not included in the complaint but has since resurfaced, it is not at issue in the Buildings Court proceeding. No party has engaged in discovery and likely would not be permitted to. *See Bible Truth*, 555 N.E.2d at 119; *see also* Ill. S. Ct. R. 201(h).

Generally, the Buildings Court does not aim to make factual findings or adjudications regarding the City's allegations. Freddie Mac, for example, has not filed an answer affirming or denying the City's allegations. The only operative pleading is the City's. Rather, allegations of defects are generally resolved when the City determines they no longer need to be prosecuted. For example, a recent Order resolves allegations as follows: "The City is satisfied that the violations in compliance in the City's Second Amended Complaint, paragraph 3(a) to 3(e) for the specified unit(s) are # 1–45, 53, 55, 59." *See* Exhibit 2, ¶ 7.

## **ARGUMENT**

## II. **CONGRESSIONAL INTENT AND EQUITABLE PRINCIPLES RENDER ABSTENTION INAPPROPRIATE**

### A. **12 U.S.C. § 1452(f)(2–3) Warrants Denial of Defendants' Motion.**

Before addressing the specifics of Defendants' arguments, the Court should first ask whether abstention is consistent with Congressional intent. If it is not, no further inquiry is needed. *See Adkins v. VIM Recycling*, 644 F.3d 483, 497 (7th Cir. 2011). Indeed, "Congress, and *not the Judiciary* defines the scope of federal jurisdiction within the constitutionally permissible bounds." *Id.* (emphasis in

original, quotations omitted). As such, "abstention doctrines are not intended . . . to alter policy choices that Congress itself considered and addressed." *Id.*

Where Congress has enacted legislation broadly authorizing federal courts to assert jurisdiction over cases involving a specified party or type of party, abstention is likely improper. *See Hammer v. United States HHS*, 905 F.3d 517, 532 (7th Cir. 2018). In *Hammer*, the court held it was improper for the Federal District Court to abstain from hearing a case removed to federal case under 28 U.S.C. § 1442 during the pendency of state litigation. 28 U.S.C. § 1442, *inter alia*, allows federal agencies and officers to remove a broad swath of state court cases to federal court. Based on this explicit statutory mandate, the court held that "beyond whether questions of state or federal law predominate," it was improper for the District Court to abstain in deference to concurrent state litigation because "Congress has already decided, as a policy" that such cases are properly heard in federal court and "[a]bstention doctrines are not intended to alter that sort of policy choice." *Hammer*, 905 F.3d at 532; *see also New Orleans Pub. Serv. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989). Here, Congress has articulated a clear policy conferring upon federal courts the broad power specifically to adjudicate any case involving Freddie Mac. *See* 12 U.S.C. § 1452(f)(2–3). The specific language of § 1452(f) makes the impropriety of abstention that much clearer. Where a statute precedes the grant of judicial authority with a 'notwithstanding' clause, there is little room for the court to abstain from exercising that authority: a "broad 'notwithstanding' provision encompasses and supersedes abstention doctrine." *Weinstock v. Islamic Republic of Iran*, No. 23 C 2824,

2025 WL 2257076, at *38 (N.D. Ill. Aug. 7, 2025) (abstention improper where statutory grant of judicial authority preceded by "notwithstanding any other provision of law . . . ."). Indeed, "Courts 'generally have interpreted . . . 'notwithstanding' language to supersede all other laws,' as 'a clearer mandate is difficult to imagine.'" *Id.* at *12 (quoting *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)).

Section 1452(f) precedes its grant of judicial authority with the following: "Notwithstanding section 1349 of Title 28 or any other provision of law . . . ." 12 USC 1452(f). Further, § 1452(f)(2) gives federal courts original jurisdiction over "all civil actions to which [Freddie Mac] is a party." *See also* 12 U.S.C. § 1452(f)(3). Congressional intent alone thus resolves this matter.

### B. The Doctrine of Judicial Estoppel and Principles of Equity Warrant the Denial of Defendants' Motion.

Under the judicial estoppel doctrine, a party cannot assume a position contrary to an earlier one it successfully maintained, especially if changing its position would harm the other party who had already accepted or relied on the earlier position. *New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001). To protect the integrity of the judicial process, such doctrine prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *Id.* at 749; *see Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000). In the Seventh Circuit, judicial estoppel is an equitable concept that is "invoked by a court at its discretion." *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010).

Defendants are not entitled to a stay because they are judicially estopped by their inconsistent positions. On April 11, 2025, Defendant removed individual cases from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division. *See supra* I.A.4. In the Notice of Removal, Defendants claimed that the venue for removal "is proper in this [federal] district and division." *See* Case: 1:25-cv-03972, Dckt. No. 1, p. 4. On April 14, 2025, in arguing for consolidation, Defendants argued that the consolidation of cases would only "expedite the proceedings" and "benefit . . . rather than prejudice—the parties." ECF No. 12, p. 7; s*ee also supra* I.A.5. Put otherwise, Defendants explicitly sought to have cases removed to and consolidated within the federal court so that the federal court could expeditiously adjudicate them—only to, upon removal and consolidation, argue that the federal court should abstain from doing so.

Defendants now argue that, as a matter of equity and policy, the federal court should not hear these matters and that they should be left to the state court, though Defendants previously removed cases adjudicating such matters from the state court to the federal court. Defendants indicated that the state court should address the ongoing disputes and that litigating in federal court creates "exactly the type of intrusion, duplication, disruption, confusion, and inefficiency," that would unduly delay the proceedings, thus repudiating its earlier position. ECF No. 33, p. 12. For example, Defendants argue that the claims originally brought by Beyond Legal Aid on behalf of residents with notices of termination will impose on pending state eviction cases. But Beyond's cases are only in federal court *because Defendants*

10

*removed them there* shortly after filing the eviction cases which Defendants now ask this Court to defer to.

Further, Defendants play especially "fast and loose" with the Court process by waiting for Plaintiffs to file the Consolidated Amended Complaint only to then request that the matter be stayed. *The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2014 WL 1979261, at *3 (N.D. Ill. May 15, 2014). Therefore, the Court should deny Defendants' Motion to Stay Proceedings based on judicial estoppel.

In the alternative, under similar reasoning, Defendants' request for equitable relief be denied under the general principles of equity. *See Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946); *see also Holland v. Fla.*, 560 U.S. 631, 650 (2010).

## III. NEITHER *BURFORD* NOR *COLORADO RIVER* WARRANT ABSTENTION

*Burford* and *Colorado River* abstentions should only be applied in exceptional circumstances. The U.S. Supreme Court and the U.S. Court of Appeals for the Seventh Circuit have both emphasized that when applying these doctrines, the strong presumption is that district courts will exercise jurisdiction. When interpreting *Burford*, the Supreme Court has urged that abstention is only meant to be exercised in rare cases, holding that *Burford* is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. . ." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). With respect to *Colorado River* abstention, the Seventh Circuit reiterates that federal courts have a "virtually unflagging obligation" to resolve the questions before them. *Vega v. Chi. Bd. of Educ.*, 109 F.4th 948, 957 (7th Cir. 2024) (quoting *Colo. River Conservation Dist. v. U.S.*, 424

U.S. 800, 817 (1976)). It has further emphasized—quoting the Supreme Court—that "only the clearest of justifications" can warrant abstention. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001).

### A. *Burford* abstention is improper.

A federal court has discretion to abstain under *Burford* if (1) "it is faced with difficult questions of state law that implicate significant state policies" or (2) "concurrent federal jurisdiction would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Adkins*, 644 F.3d at 504 (7th Cir. 2011) (quotation marks and citations omitted). Defendants' argument urging *Burford* abstention, an exotic doctrine that "only rarely favors abstention," is without merit. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996).

### 1. *This lawsuit does not interfere with state adjudication of complex questions of unsettled law.*

First, the claims in the present case in no way pose complicated questions of unsettled law relevant to important state interests which are likely to arise in Buildings Court. *See New Orleans Pub. Serv., Inc.*, 491 U.S. at 350–51. Because *Burford* applies only in the extraordinary circumstances where such uncertainties must be addressed, it is entirely inapplicable to the present case where no unsettled state law exists.[3] *Id.* at 350.

---

[3] It is further questionable whether *Burford* applies to questions of municipal law, as federalism affords far less protection to municipalities than to states. *See U.S. ex rel. Chandler v. Cook County*, 277 F.3d 969, 980 (7th Cir. 2002) ("This presumption is applied to protect the states because of their dignity as sovereigns within our system of federalism . . . . The presumption cuts the other way for municipalities").

Second, Plaintiffs' Complaint largely focuses on matters of federal interest, rendering *Burford* inapplicable. *See Hammer*, 905 F.3d at 533. Specifically:

- Freddie Mac itself is a federal government entity, and litigation involving Freddie Mac is explicitly considered a federal issue – *see* 12 U.S.C. § 1452(f); *see* ECF No. 12, p. 2 (emphasizing federal interest of Freddie Mac).

- The property is federally subsidized and closely regulated by HUD. The federal government maintains a strong interest in the condition of the properties it subsidizes and the behavior of their owners, largely centering the entire complaint around federal interests. *See, e.g.*, 24 C.F.R. 5.703; HUD Handbook 4350.3, *available at* https://www.hud.gov/sites/documents/43503hsgh.pdf; *see Hammer*, 905 F.3d, at 523, 532 (state administration of federal programs are largely a matter of federal concern; "under the ordinary rules of the *Supremacy Clause*, principles of federalism do not warrant deference to the state's regulatory regime." (quotations and citations omitted)).

- Plaintiffs make multiple claims under federal statutes. *See* Counts XI (Rehabilitation Act), XIII (Fair Housing Act); *see also* Count XII (derivative of Count XI); Count XIV (*see Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, n. 1 (7th Cir. 2024) (stating that Illinois civil rights law generally follows interpretation of federal civil rights laws)).

- Several claims not brought under federal statute, nonetheless, revolve around HUD regulations, guidance, and leases, and other federal law. *See, e.g.*, Counts

13

III, VIII, & IX for breach of lease[4]; *see also* Counts VI & VII (815 ILCS 505/2: "In construing this section [of the Illinois Consumer Fraud and Deceptive Business Practices Act], consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.").

In short, a case brought against Freddie Mac regarding their management of federally subsidized housing and alleging violations of federal laws and HUD leases, regulations, and guidance—at least largely revolves around legal questions of federal import. *See Hammer*, 905 F.3d at 533. This fact alone also strongly militates under abstention under *Colorado River*. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983); *see infra* p. 26 (discussion of factor v.)

### 2. *The federal case will not impede on a special state forum.*

The Buildings Court is not a court of specialized expertise that is uniquely suited to adjudicate the issues raised in this federal case. A "special forum" is one that "stand[s] in a special relationship of technical oversight or concentrated review to the evaluation of . . . claims" arising under the state administrative scheme at issue. *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 364 (7th Cir. 1998), (quoting *Property & Cas. Ins. Ltd. v. Central Nat'l Ins. Co.*, 936 F.2d 319, 323 (7th Cir. 1991)). Defendants argue that this requirement is met by the mere existence of courts that routinely addresses property use disputes, stating that they have "clearly established their own procedures and frameworks for addressing these issues." ECF

---

[4] Owners of HUD Project-based Section 8 buildings must use HUD-approved leases; *see* Handbook 4350.3, Ch. 6., fig. 6-2, Model Lease at https://www.hud.gov/sites/dfiles/OCHCO/documents/90105a.pdf.

No. 33 at 15. However, courts have repeatedly rejected this argument. S*ee, e.g.*, *New Orleans Pub. Serv.,* 491 U.S. at 362 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy.").

Indeed, the Buildings Court cannot be classified as a specialized forum because Illinois law does not designate the Buildings Court as a court with technical expertise or concentrated review. Rather, under State and City law, the City's claims are simply to be filed in Circuit Court. *See* 65 Ill. Comp. Stat. Ann. 5/11-31-2; Chi. Mun. Code § 5-12-110(e). Yet for *Burford* to apply "judicial review must, by state legislative design, be concentrated in a few particular courts for its narrow abstention doctrine to be applicable." *Adkins*, 644 F.3d at 504.

Importantly, this Court has already held that the Illinois Municipal Code does not create a specialized forum for adjudicating unsafe property claims that warrants *Burford* abstention. *See Kennedy v. Vill. of Oak Lawn*, No. 99 C 7917, 2000 WL 1721044, at *5 (N.D. Ill. Nov. 16, 2000):

> Here, there is no forum that stands in a 'special relationship of technical oversight or concentrated review' of claims arising from . . . demolition proceedings. Rather, the Illinois Municipal Code provides only that a property owner wishing to object to the demolition of his or her property may file a complaint with an unspecified 'court of competent jurisdiction' or seek 'a hearing' before 'a court.'). Because there is no specialized proceeding or forum for addressing claims pursuant to section 11–31–1(e), *Burford* does not require this Court to abstain . . . .
> More to the point, Illinois simply does not designate the sorts of issues raised

in the federal complaint to a special tribunal. Rather, under both Illinois and Chicago

municipal law, tenants may sue landlords over building conditions, raise matters of RLTO compliance, sue for retaliation, or argue that their building is physically inaccessible under civil rights laws, without evoking any special tribunal or process.[5] Further, Illinois law explicitly states that municipal code hearing departments are not the exclusive forum for enforcing a municipality's code. 65 Ill. Comp. Stat. Ann. 5/11-31.1-3.

### B. *Colorado River* Does Not Warrant Abstention.

In order to apply the *Colorado River* abstention doctrine, courts engage in a two-step process. The first asks whether the federal and state procedures are parallel. *Adkins*, 644 F.3d at 498 (7th Cir. 2011). Two suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues." *Id.* Crucially, suits are not parallel—and abstention is improper—unless there is no substantial doubt that the state litigation is an adequate vehicle for the *complete* and prompt resolution of the issues; otherwise, granting a stay would be a "serious abuse of discretion." *Moses H. Cone*, 460 U.S. at 28 (1983).[6] If any doubt remains as to whether the claims are parallel, "a district court should not abstain." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011).

### 1. *The parties are not parallel.*

Under *Colorado River*, "the requirement is that the parties be substantially the same." *Clark v. Lacy,* 376 F.3d 682, 686 (7th Cir. 2004). Though they need not be

---

[5] Chi. Mun. Code § 5-12-110(e) (RLTO); 765 ILCS 721/10 (Illinois Landlord Retaliation Act); 29 U.S.C. § 794a(a)(2) (Rehabilitation Act); 42 U.S.C. § 3613 (Fair Housing Act); 775 ILCS 60/20 (Illinois Human Rights Act); 815 ILCS 505/2 (Illinois Consumer Fraud and Deceptive Business Practices Act).

[6] Moreover, if additional elements are needed to prove a claim in one suit when compared to the claims in the allegedly parallel suit, the claims are not in fact parallel. *See, e.g., Weston v. DB Priv. Wealth Mortg., Ltd.*, 2023 U.S. Dist. LEXIS 131977, *9 (N.D. Ill. 2023).

"completely identical," this remains a high burden for Defendants. *See id.* ("Parties with 'nearly identical' interests are considered 'substantially the same' for Colorado River purposes." (citation omitted)). Importantly, while "simply tacking on a few more" defendants does not break parallelism, here, none of the Plaintiffs in the Buildings Court case are parties to the federal proceeding. *Contra Freed v. JPMorgan Chase Bank, N.A.,* 756 F.3d 1013, 1020 (7th Cir. 2014)

Because the cases have different parties, the resolution of one case may not resolve the claims of the plaintiffs in the other, and the cases are thus not parallel. *See Herron v. Gold Std. Baking, Inc.*, 2023 U.S. Dist. LEXIS 221740, 4–5 (N.D. Ill. 2023); *see also Veritas v. Nowak*, 2022 U.S. Dist. LEXIS 233074, 7–8 (N.D. Ill. 2022). The Tenant Association, as intervenor in Buildings Court, does not seek to demonstrate how any individual resident, not to mention the specific Plaintiffs here, have been injured and should be compensated. The Tenant Association does not focus on the unit-specific issues faced by Plaintiffs. It certainly has made no attempt to raise the retaliation, improper notices of termination, difficulty obtaining accurate rent ledgers, ignored reasonable accommodation requests, and more faced by Plaintiffs.

As such, even if Plaintiffs are motivated by goals they share with the Tenant Association, such as improved building conditions and ensuring high-quality building ownership and management, they are not parallel. Rather, where the court treats an organization and members of that organization as parallel parties under *Colorado River*, it is because the members' suit expressly pursues only the interests of the

17

organization, not the individual interests of members. *See Clark*, 376 F.3d at 686 (Derivative shareholder suits on behalf of Sears have parallel parties because "we consider Sears' interests, not the individual interests of the plaintiffs who brought the actions on Sears' behalf."); *Adkins*, 644 F.3d at 499 n. 6 (distinguishing *Clark*). Even if originally motivated by collective goals, Plaintiffs here clearly bring their suits in their individual capacities on their own behalf, focusing largely on their own injuries and need for relief.

As importantly, per *supra* I.B., the role of the Tenant Association in Buildings Court should not be overstated. It is the City of Chicago, not the Tenant Association as intervenor, who drives the Buildings Court litigation; Plaintiffs are not parallel parties with the City. *See Adkins,* 644 F.3d at 500 (no parallel parties between enforcement agency and private citizens).

### 2. The claims are not parallel.

As the Seventh Circuit requires, proceedings are "parallel" only if substantially the same parties are contemporaneously litigating substantially the same issues and there is a substantial likelihood the state case "will dispose of *all* claims presented in the federal case." *Adkins*, 644 F.3d at 498–99; *Lumen Constr.*,780 F.2d at 695. If there is any substantial doubt the state forum is an adequate vehicle for a "complete" resolution, abstention is a "serious abuse of discretion." *Moses H. Cone*, 460 U.S. at 28. Measured against those standards, the City's Buildings Court prosecution is not parallel to this case because it concerns different issues and causes of action and cannot effectuate the complete disposition that *Moses H. Cone* and Seventh Circuit law require.

Buildings Court is an ordinance-enforcement forum focused on prospective compliance—not adjudication of tenants' private federal/statutory claims largely concerned with past harm. *See, e.g.*, *City of Chicago v. RN Realty, L.P.*, 357 Ill. App. 3d 337, 339–40 (1st Dist. 2005) (per-day fines and injunctive compliance); Chi. Mun. Code § 14A-3-302 (Construction Codes enforcement). By sharp contrast, Plaintiffs here seek tenant-specific damages and federal statutory relief (FHA/§504/ICFRA), RLTO remedies, and lease-based relief that municipal code prosecutions do not adjudicate or award. The City's Buildings Court complaint confirms that forum's property-level compliance posture (elevators, exterior wall, etc.). Similarly, this governing standard Illinois summary eviction actions are "special statutory," confined to issues "germane to" possession and rent; they do not provide a vehicle to fully litigate Plaintiffs' FHA, §504, PBRA, RLTO, ICFA and other claims nor award their full remedies. 735 ILCS 5/9-106; *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 357–63 (1972); *Spanish Court Two Condo. Ass'n v. Carlson*, 2014 IL 115342, ¶¶ 15–21.

A brief discussion of each count further demonstrates that Plaintiffs' claims cannot be substantially resolved by the Buildings Court:

- **Count I**: While this count most parallels the matters at issue Buildings Court, *Colorado River* abstention would still be inappropriate, per the analysis immediately above. Defendants' reiteration that "almost all [issues brought in the Buildings Court case] have been resolved" illustrates Plaintiffs' point, as such resolution does not resolve corollary matters in Plaintiffs' Complaint. For example, the City has resolved its allegation of rodent infestations for the specified

units. *See* Exhibit, 2 ¶ 7 (referencing Exhibit 1, ¶ 3a(3)). Yet, for example, residents who endured such infestations still seek compensation through this litigation. The resolution of the allegation in the Buildings Court case does not resolve such claims here.

- **Count II**: Whether Freddie Mac violated the warranty of habitability does not turn simply on whether Freddie Mac violated the City Code, as "the existence of housing code violations is only one of several evidentiary considerations that entered into the materiality of the breach . . . ." *See Glasoe v. Trinkle*, 107 Ill.2d 1, 12 (1985).

- **Count III**: Count III is a contract claim governed by HUD-regulated leases, not merely "code status." Contract liability and expectancy damages are outside the Buildings Court's remedial toolbox. *AAR Int'l*, 250 F.3d at 518–20. Plaintiffs' claims for breach of their HUD-approved lease do not turn on the resolution of code violations in the Buildings Court case. *See, e.g., S. Austin Realty Ass'n, v. Sombright*, 47 Ill.App.3d 89 (1997) (duty to make repairs and duty to comply with building codes should be treated as distinct obligations under lease). For such owners, compliance with building codes is necessary, but not sufficient for compliance with the maintenance provisions of the lease.

- **Counts IV, V, and VIII**: The retaliation counts and the organizing-rights lease breach counts require tenant-specific findings: protected activity (tenant association, notices, complaints), adverse actions (termination notices, threats, ledger tactics), and causation. Plaintiffs' Complaint pleads threats and a "Demand

20

to Discontinue False Statements" after Tenants raised accommodation and elevator concerns; it alleges ledger misstatements and refusals to provide ledgers to retaliate and chill organizing. Whether Defendants violated 24 C.F.R. Part 245's protections for tenant organizations is a HUD-program question not adjudicated in Buildings Court. And only three eviction cases are even pending; they cannot resolve the organizing-retaliation claims of all Plaintiffs, much less provide RLTO and Illinois Landlord Retaliation Act damages to non-eviction defendants. The Seventh Circuit requires a "substantial likelihood" the state case will dispose of all federal claims. Here, it will not. *See AAR Int'l*, 250 F.3d at 518; *Adkins*, 644 F.3d at 498

- **Counts VI & VII**: The ICFA counts allege deceptive and unfair practices— e.g., misrepresenting elevator status in January–February 2025 advertising, threatening tenants who spoke out, and misstating or withholding ledgers— causing individualized consumer injuries. Buildings Court does not adjudicate ICFA deception/unfairness elements or award ICFA damages, punitive damages (where available), or fees, and it will not resolve whether the challenged messaging and ledger practices were deceptive or unfair under 815 ILCS 505/2. The counts therefore present distinct issues, proof, and remedies, defeating parallelism. *See Lumen Constr.*, 780 F.2d at 695.

- **Count IX**: Count IX turns on *federal due-process-like* content and service requirements (dual-mode service; itemized arrears by month; cure instructions). The Complaint quotes and invokes 24 C.F.R. § 247.4 and seeks corresponding

relief. The Buildings case will not resolve whether Defendants properly engaged in the lease termination process. Buildings Court does not adjudicate § 247 compliance. Even Defendants frame these issues as "improperly serving termination notices," which underscores they are *not* code-enforcement matters.

- **Count X**: Freddie Mac does not ask that this Court abstain from adjudicating this Count. Arguably, this calls Defendants' entire Motion into question. *Weston*, 2023 U.S. Dist. LEXIS 131977, at *10 ("This language strongly suggests that a case must be stayed or retained in its entirety.") (citing *Moses H. Cone*, 460 U.S. at 28)).

- **Count XI–XIV**: These statutes and regulations involve a different inquiry than what is required under the Building Code, thus militating against abstention. *See Weston*, 2023 U.S. Dist. LEXIS 131977, at *9. For example, these laws make it unlawful to operate a building in a way that is needlessly inaccessible to people with disabilities and refuse to properly address reasonable accommodation requests. 42 U.S.C. § 3604(f). Much of the alleged violations seek to compensate residents forced to live through past elevator breakdowns, especially one lasting between October 2024 and March 2025. Further, even if the Buildings Court has been "satisfied with Freddie Mac's efforts" regarding the elevators, Dckt. No. 33, p. 11, this does not address whether the building is sufficiently accessible to residents with disabilities or if Defendants have properly addressed reasonable accommodation requests. Indeed, even if the Buildings Court process may eventually resolve problems with the elevators, Plaintiffs with

mobility impairments seek to vindicate their rights and have their mobility needs accommodated in the meantime. *See, e.g.,* Dckt. No. 23 at ¶¶ 84-89, 312 (F–J), 324.

Seventh Circuit law is clear: proceedings are parallel only if substantially the same parties litigate substantially the same issues and there is a substantial likelihood the state case will dispose of *all* federal claims. *AAR Int'l*, 250 F.3d at 518–20; *Adkins*, 644 F.3d at 499–500; *Lumen Constr.*, 780 F.2d at 695–97. Where, as here, the state forum cannot adjudicate the § 504/FHA/IHRA elements or award the RLTO/ICFA/contract damages and fee-shifting sought, there is at least "substantial doubt" the state case will fully resolve the controversy—making abstention a "serious abuse of discretion." *Moses H. Cone*, 460 U.S. at 28 (1983). That is true count-by-count, and especially so given Defendants' own description of the Buildings Court's limited, forward-looking remedial scheme.

### 3. *Exceptional circumstance factors*

Even if the determination under the first step is that the Federal and Buildings Court cases are parallel, no exceptional circumstances exist warranting abstention. As stated by Defendants, the Seventh Circuit recognizes ten "exceptional circumstance" factors. *See Braid v. Stilley*, 142 F.4th 956, 970 (7th Cir. 2025).

Although no one factor is determinative, the Supreme Court has cautioned that "the presence of federal-law issues must always be a major consideration weighing against surrender." *Huon*, 657 F.3d at 648. Further, given the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction. *Id.* In determining whether exceptional circumstances exist, there remains a "general presumption against abstention." *AXA Corporate Sols. v. Underwriters Reins. Corp.*,

347 F.3d 272, 278 (7th Cir. 2003). In this case, the factors, taken together, support the Court's exercise of jurisdiction without a stay. Plaintiffs address each factor in turn below:

i.  <u>Whether the state court has assumed jurisdiction over property.</u>
In attempting to apply this factor to this case, Defendant cites no case law and provides only inapposite analysis. In fact, this factor seems designed to prevent a scenario in which a state court assumes exclusive jurisdiction over a property and a federal court then assumes jurisdiction over the same property, thus giving rise to conflicting decisions about who owns or may access the property. *See, e.g., Colorado River*, 424 U.S. at 819.

Such circumstance does not arise here. First, Plaintiffs do not request that this Court assume jurisdiction over the property, nor do their claims necessitate such a request. Second, due to Defendants' action, the Buildings Court has not maintained exclusive jurisdiction over the property. During the pendency of the Buildings Court case, Freddie Mac filed a separate foreclosure case and successfully petitioned a different court to assume control of the property through receivership. ECF No. 33, p. 11. Further, after both the initiation of this litigation and Beyond Legal Aid's initiation of state declaratory judgment proceedings, Defendants filed three separate eviction actions and opposed their consolidation. *See supra* I.A.7. Perhaps Defendants will argue that those cases do not seek to assume control over the property per *Colorado River*, but, if that is true then this case certainly does not either.

24

ii. <u>The inconvenience of the federal forum.</u>

Defendants have never raised the inconvenience of the federal forum as factor favoring abstention, and it is Defendants who have removed litigation from state court to this forum. This factor weighs against abstention.

iii. <u>The desire to avoid piecemeal litigation.</u>

First, in arguing that concurrent litigation risks courts coming to conflicting decisions, Defendants ignore the different natures of relief sought in each case and overstate the practical possibility of conflicts occurring. For one, this again mischaracterizes the nature and practice of the Buildings Court proceeding and its key distinctions from this proceeding. *See supra* I.B.; *see also, e.g.*, III.B.2 (discussing Count I). Additionally, the potential for conflict between Plaintiffs' requested relief and the relief provided through the Buildings Court is, at most, speculative. In the unlikely event that such a potential conflict were to arise, injunctive relief could be fashioned in a complementary way that would eliminate tension between the federal and Buildings Court orders. Such practicalities are highly relevant, as *Colorado River* instructs that "[i]f the federal proceedings are unlikely to interfere with state proceedings, federal courts have a 'virtually unflagging obligation' to resolve the questions before them." 424 U.S. 800 at 817.

Second, at the very least, the risk of inefficient litigation does not override a federal court's obligation to exercise its jurisdiction. *See Huon*, 657 F.3d at 649 ("Abstention requires more than the pendency of another lawsuit, because judicial economy will always be an issue when there is concurrent litigation…[a]lthough at first blush it may seem inefficient to allow both cases to proceed, the *Colorado River*

25

doctrine focuses on a federal court's obligation to exercise its jurisdiction"). Lacking a strong justification to stay the federal case—especially given Congress' policy in favor of litigating Freddie Mac cases in federal court—judicial efficiency arguments are unavailing. *See* 12 U.S.C. § 1452(f).

      iv.    <u>Order in which courts assumed jurisdiction/progress of cases.</u>

First, regarding the eviction cases, Defendants filed the state eviction cases after any case filed by any Plaintiff or group of Plaintiffs, including the now-removed state cases for declaratory relief filed by Beyond Legal Aid. This case and the state eviction cases have made similar progress.

Regarding the Buildings Court case, obviously it was filed before Plaintiffs' cases. However, in considering this factor, priority should not be measured exclusively by which complaint was filed first—the amount of progress made in each case should also be considered. *Moses H. Cone*, 460 U.S. at 21. While the Buildings Court has, of course, made more progress in the things the Buildings Court does, such progress is only relevant to the extent the cases are parallel, which Plaintiffs argue that are not. The Buildings Court has made no progress in, for example, compensating residents for having lived under poor conditions or protecting them from retaliation, and has not assumed jurisdiction over such matters; this Court has.

      v.    <u>The sources of governing law.</u>

Defendants assert that the case's claims are based "overwhelmingly on city ordinances and state statutes setting the standards for property maintenance and repair," yet they ignore that Plaintiffs' Complaint is largely anchored to federal law and legal issues of distinctly federal concern. *See supra* III.A.1. The existence of

federal laws underscores the stronger role that federal courts have to play and weighs against abstention. *See Moses H. Cone*, 460 U.S. at 26 ("The presence of federal-law issues must always be a major consideration weighing against surrender.").

      vi.    The adequacy of state court action to protect the federal Plaintiff's rights.

Contrary to Defendants' position, the Buildings Court case is not adequate to protect Plaintiffs' rights. Defendants mischaracterize the relief sought in the federal case by erroneously reducing it to property maintenance and repair, even though the complaint seeks broader relief, including damages (actual, emotional distress, and punitive) and injunctive relief to prevent disability discrimination against tenants. The Buildings Court will not address such requests, nor will it address Plaintiffs' myriad claims and allegations. *See, e.g.*, ECF No. 23 at ¶¶ 317, 325. This, in combination with the nature of the Buildings Court process, weighs heavily against abstention. *See supra* I.B.

      vii.    The presence or absence of concurrent jurisdiction.

Generally, "the availability of concurrent jurisdiction weigh[s] in favor of a stay." *Clark*, 376 F.3d at 688. However, in this case, the Buildings Court lacks jurisdiction over most of Plaintiffs' claims precisely because Defendants removed those claims to federal court. *See Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1078 (N.D. Ill. 2004) ("Once a removal petition is filed and proper notice is given to adverse parties in state court, the federal district court has exclusive jurisdiction over the case."). Accordingly, the federal court, not the Buildings Court, now exercises jurisdiction over these claims. Moreover, 12 U.S.C. § 1452(f) expressly grants federal jurisdiction over cases in which Freddie Mac is a party, including those removed to

27

federal court. Thus, the lack of concurrent jurisdiction here weighs against abstention.

### viii.    The availability of removal.

The availability of removal can weigh in favor of a stay when state-court defendants are unable to remove state law claims. *See, e.g., Loughran v. Wells Fargo Bank, N.A.,* 2 F.4th 640, 644–45 (7th Cir. 2021). The unavailability of removal in such cases "favors a stay, because the purpose of this factor is to prevent litigants from circumventing the removal statute." *Id.* at 650. At the very least, Plaintiffs could have filed their eviction cases in federal court. 28 U.S.C. § 1452(f)(2). Instead, Defendants filed these cases in state court after removing Plaintiffs' claims to federal court.

### ix.    The federal suit is not contrived or vexatious.

The tenth factor weighs in favor of a stay if the federal claim is "vexatious" or "contrived." *Freed*, 756 F.3d at 1024. The vexatious nature of a suit also depends on whether the "claims and parties in the federal suit could have been included in the original state court proceeding." *Id*. Efforts to seek a second audience can be illustrated by an "attempt to evade the state court" or "end-run" an agreement. *Id*.

Needless to say, Plaintiffs could not have included its claims in the original state court proceeding, as that proceeding was initiated by the City of Chicago. And, as discussed at length, the Buildings Court would not entertain Plaintiffs' claims or requests for relief. *See Bible Truth Crusade*, 555 N.E.2d, at 119.

Further, Plaintiffs' claims are not rendered contrived or vexatious because that they were preceded with a settlement demand.[7] There is nothing suspect about

---

[7] Plaintiffs note their objection to the introduction of the settlement letter for these purposes under FRE 408. Further, such use of settlement letters is unduly prejudicial as it encourages potential

negotiating parties threatening litigation if their demands are not met. That categorizes almost all pre-litigation settlement demands. Nor is it vexatious for parties to offer in settlement something that may not be entitled to in litigation; such options provide a good reason to settle.[8] Plaintiffs were willing to forego potential compensation and other relief in exchange for the opportunity to vet potential buyers to help ensure the next buyer would adequately address Plaintiffs' concerns. But defendants rejected this proposal with no attempt to negotiate. Even though it is abundantly clear their original demand would not be met, Plaintiffs continue to litigate, pursuing more-than-credible claims to obtain relief not available in the Buildings Court and adjudicate matters the Buildings Court cannot.

## **CONCLUSION**

Defendants' Motion to Stay Proceedings should be denied as it failed to meet its high burden to justify abstention. In fact, Defendants' Motion should be denied before even reaching their specific arguments. First, Defendants embraces contradictory positions – removing cases to federal court only to then petition for the federal case to be stayed because such matters should be adjudicated in state court. Defendants should be estopped from pursuing abstention. Second, Congress has clearly articulated this Court's nearly unmitigated jurisdiction to hear cases involving Freddie Mac. In light of this clear Congressional intent, it is inappropriate for this Court to abstain.

---

plaintiffs to skip settlement discussion altogether and jump straight into litigation to avoid running the risk that they will be accused of using the litigation to extort the defendants for whatever they requested in their settlement demand.

[8] *See, e.g,* Tim A. Baker, *Sizing up Settlement: How Much Do the Merits of a Dispute Really Matter*, 24 HARV. NEGOT. L. REV. 253, 262-3, 270 (Spring 2019).

Even if these arguments are unavailing, it is still inappropriate for this Court to abstain under *Burford* or *Colorado* River. *Burford* abstention is inappropriate because Illinois does not designate the matters here at issue to a special forum, this case does not raise questions of state law that the Buildings Court should be left to help resolve under *Burford*, and this case largely concerns federal interests.

*Colorado River* also fails to warrant a stay. The Buildings Court case and this federal proceeding are not parallel: they involve different parties, causes of action, remedies, and governing law. The Buildings Court proceeding, by its nature, cannot resolve Plaintiffs' claims. Even if they were deemed parallel, the Seventh Circuit's ten "exceptional circumstance" factors support this Court's exercise of jurisdiction. The mere existence of overlapping factual circumstances does not justify abstention, much less the extraordinary relief Defendants seek. Defendants' Motion should be denied.

Respectfully submitted,

/s/ Eric Sirota

Peter Luck
BEYOND LEGAL AID
17 N. State St., Suite 1380
Chicago, IL 60602
pluck@beyondlegalaid.org
(312) 999-0056
*Counsel for Plaintiffs represented
by Beyond Legal Aid*

Eric Sirota
BLUHM LEGAL CLINIC
NORTHWESTERN UNIVERSITY
PRITZKER SCHOOL OF LAW
375 East Chicago Avenue
Chicago, IL 60611
ericsirota@law.northwestern.edu
(312) 503-8576
*Counsel for Plaintiffs represented by
Bluhm Legal Clinic*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 22, 2025, a copy of the foregoing Plaintiffs' Response to Defendants' Joint Motion to Stay Proceedings has been duly served upon the persons listed below via the United States Postal Service and/or email:

Cara M. Houck
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
(312) 263-3600
cara.houck@hklaw.com
Attorney for Federal Home Loan Mortgage Corp.

Jamie L. Burns
Levenfeld Pearlstein, LLC
120 S. Riverside Plaza, Suite 1800
Chicago, IL 60606
(312) 476-7601
jburns@lplegal.com
Attorney for Ansonia Property Mgmt., LLC

Respectfully submitted,

/s/ Eric Sirota
ERIC SIROTA
One of the Attorneys for Plaintiffs

Peter Luck
BEYOND LEGAL AID
17 N. State St., Suite 1380
Chicago, IL 60602
pluck@beyondlegalaid.org
(312) 999-0056

*Counsel for Plaintiffs Carla Antwine,*
*Kwana Baldwin, L.J., Anthony Boykin,*
*Laprena Brown, Aja Bryant, Jessie Chaffin,*
*Lequita Davis, Victoria Davis, Arthur Evans,*
*Crystal Green, Melvin Green, Kimberly Marzette,*
*Teresa Oliver, Laila Scott, Erica Watkins,*
*Misty White, Cheria Whitty,*
*and Rashidat Williams*

31

Eric Sirota
BLUHM LEGAL CLINIC
NORTHWESTERN UNIVERSITY
PRITZKER SCHOOL OF LAW
375 East Chicago Avenue
Chicago, IL 60611
ericsirota@law.northwestern.edu
(312) 503-8576

*Counsel for Plaintiffs Kwana Baldwin,
L.J., Ella Bell, Angelique Funches,
Melvin Green, Cora Lucas, Asia Martin,
and Rosilyn Sims*