**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ASIA MARTIN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 2211** |
| | ) | |
| **FEDERAL HOME LOAN** | ) | |
| **MORTGAGE CORP. and ANSONIA** | ) | |
| **PROPERTY MANAGEMENT, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

      This case is a combination of what were originally several different lawsuits,

some of which were filed in federal court and some of which were filed in state court and

removed here. The amended complaint, which effectively combines all the prior

lawsuits into one, is brought on behalf of a little over twenty plaintiffs, all of whom are

tenants in a large apartment complex in Chicago's Kenwood neighborhood called Ellis

Lakeview Apartments. The current owner of the complex, and thus the plaintiffs'

landlord, is the Federal Home Loan Mortgage Corp., commonly known as Freddie Mac.

The plaintiffs allege that the complex, and their apartments, are in poor and

uninhabitable condition in various respects. They contend that Freddie Mac and

Ansonia Property Management, LLC, which manages the property as Freddie Mac's

agent, are not managing the complex properly and have failed to keep it in good

condition and perform necessary repairs. The plaintiffs assert claims for the following

(not all claims are asserted by all plaintiffs):

- Failure to maintain the premises in violation of Chicago's Residential Landlord Tenant Ordinance (RLTO);

- Breach of the implied warranty of habitability;

- Breach of certain terms of the plaintiffs' leases;

- Retaliation, in violation of the RLTO, for complaining about conditions at the property;

- Retaliation in violation of the Illinois Landlord Retaliation Act;

- Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA);

- Violation of the RLTO's security deposit requirements;

- Violation of the federal Rehabilitation Act;

- Violation of the Illinois Civil Rights Remedies Restoration Act;

- Discrimination based on disability in violation of the federal Fair Housing Act; and

- Violation of the Illinois Human Rights Act.

Plaintiffs seek damages; on some of the claims, a declaratory judgment that they have lawfully withheld rent and/or are entitled to pay reduced rent; on some claims, an order that they are entitled to retain possession of their apartments; and on some claims, a stay of any eviction actions. The prayer for relief on plaintiffs' ICFA claims includes a generic request for "final and preliminary injunctive relief as appropriate," *see* Am. Compl., Counts 6, 7, and the prayer for relief on their Rehabilitation Act, Fair Housing Act, and Illinois Human Rights Act claims includes a request for "injunctive

2

relief as may be necessary to ensure Plaintiffs are not discriminated against due to their disabilities . . . ." or are "unable to sufficiently utilize the Property." *See id.*, Counts 11, 13, 14.

As indicated earlier, some of the plaintiffs' individual cases were originally filed in federal court. That was done pursuant to 12 U.S.C. § 1452(f), which provides that all civil actions to which Freddie Mac is a party "shall be deemed to arise under the laws of the United States," and gives federal district courts original jurisdiction over such actions. Several other plaintiffs originally filed suit in state court; Freddie Mac removed those suits to federal court based on section 1452(f). Now, however, Freddie Mac and Ansonia seek to stay this case pending another ongoing action pending in state court.

A building code enforcement suit by the City of Chicago concerning the Ellis Lakeview complex has been pending in state court for around four years. In that action, the City alleges that various conditions at the apartment complex run afoul of the requirements of the City's building code. A Circuit Court judge presides over the case. The judge is assigned to what the parties variously refer to as "Building Court" or "Housing Court," but it's actually the "Housing Section of the Circuit Court of Cook County," described on that court's official website as "a section within the First Municipal District" that "hears cases involving municipal housing code violations" on properties in Chicago and unincorporated Cook County. *See* https://www.cookcountycourtil.gov/district/first-municipal-district-chicago/housing-section (last visited Nov. 16, 2025).

In the City's lawsuit, it seeks to enforce the Chicago municipal building code and remedy alleged violations of the code. The primary parties are the City and the

property's owner and manager, but it appears that the Ellis Lakeview Tenant Association was granted leave to intervene, and according to the amended complaint in the present case, all the plaintiffs here are members of that association. But the only relief sought in the code enforcement suit is to bring the property into compliance with the building code. Damages are not an available remedy. And there is no contention that tenants can, through the building court case, obtain relief regarding the terms of their individual leases, reduction of their rent, or a halt to eviction efforts. In addition, the disability discrimination and retaliation-based claims in the present case are not at issue in the code enforcement case, at least as best as the Court can determine from the parties' submissions.

Freddie Mac and Ansonia have moved to stay proceedings in the present case pending resolution of the proceedings in the City's code enforcement lawsuit. They contend that a stay is appropriate under *Burford v. Sun Oil Co.*, 319 U.S. 215 (1943), "to avoid disruption of" the state-court case, Defs.' Mem. at 2, or alternatively under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## Discussion

### A.    Burford abstention

First, the defendants argue that the Court should abstain from hearing this case under the abstention doctrine presented in *Burford v. Sun Oil Co.* The Seventh Circuit has identified two circumstances in which *Burford* abstention may be appropriate. First, federal courts should abstain from deciding "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result of the present case." *Hartford Cas. Ins. Co. v. Borg–Warner Corp.,* 913 F.2d 419, 425 (7th

4

Cir.1990). Second, federal courts should abstain "from the exercise of federal review that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.*

Only the second type of *Burford* abstention appears to be at issue here. Without minimizing the importance of the plaintiffs' claims, it would be quite a stretch to say that they involve "policy problems of substantial public import whose importance transcends the result of [this] case." Rather, the claims present a relatively typical landlord-tenant dispute over building conditions, though on a larger scale than the norm given the number of plaintiffs involved.

As for the second type of *Burford* abstention, the defendants have not credibly identified any potential for disruption of the code enforcement suit. There is no discovery, as such, in that case, and thus discovery here will not conflict with discovery that has been or will be done there. And the remedies sought here—largely, damages, rent reductions, and preventing evictions—in no way conflict, or even overlap, with the remedies sought and available in the code enforcement case. The defendants emphasize that the plaintiffs' request for relief here includes a request for an injunction. But in this regard, it isn't sufficient to look at the case from thirty thousand feet; closer inspection is required. As indicated earlier, the prayer for relief on plaintiffs' ICFA claims includes a generic request for "final and preliminary injunctive relief as appropriate." *See* Am. Compl., Counts 6, 7. But there is no indication that injunctive relief on a consumer fraud claim—once this case reaches final judgment—would disrupt the code enforcement suit or interfere with it in any way (assuming that suit is still pending at that point, which is unlikely). The only other spots in the complaint where a reference to

5

injunctive relief is made is in the prayer for relief on the plaintiffs' Rehabilitation Act, Fair Housing Act, and Illinois Human Rights Act claims, which reference "injunctive relief as may be necessary to ensure Plaintiffs are not discriminated against due to their disabilities . . ." or are "unable to sufficiently utilize the Property." *See id.*, Counts 11, 13, 14. It's theoretically possible that disability-related injunctive relief might include modifications or repairs to the property. But with the exception of the IHRA claim, which appears to be a tag-along, these are claims under federal law which, to the extent it conflicts with whatever is required under the Chicago building code, likely would trump state law. And that aside, if and when the present case gets to the remedial stage,[1] there will be plenty of opportunity to make sure that any injunctive relief the Court orders—if there is any, which is speculative at this point—will not interfere with whatever is going on in the code enforcement proceeding. The bottom line is that the (barely) theoretical possibility of a conflict down the road is not a basis to stay the present case at its inception.

For these reasons, the Court overrules the defendants' request for *Burford* abstention.

### B. Colorado River abstention

The Court turns next to the defendants' request for *Colorado River* abstention. Under *Colorado River*, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813, and it may be invoked only in

---

[1] The plaintiffs have not moved for a preliminary injunction.

those "exceptional circumstances" in which abstention "would clearly serve an important countervailing interest." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir. 1996) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

A court conducts a two-part inquiry to determine if abstention is appropriate under *Colorado River*. First, the court determines whether the state and federal suits are parallel. If they are, the court then considers a number of factors to determine if there are exceptional circumstances that justify abstention. *Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006).

The first question is whether this case and the state court case are "parallel." Formal symmetry is not required; "a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 752. To determine whether two suits are parallel, a district court "should examine whether the suits involve the same parties, arise out of the same facts, and raise similar factual and legal issues." *Id.*

The parties, though not the same, are overlapping: the defendants are involved in both cases, and the tenant association, which presumably acts in the interests of the tenants (including the plaintiffs here), was granted leave to intervene in the state court case. And the cases, at least at a general level, arise from the same facts, specifically the condition of the property. It is difficult to say, however, that the two cases raise similar issues. The state court case involves an effort to remediate allegedly poor conditions at the property, period; it seeks compliance going forward. The present case, by contrast, largely involves the monetary consequences of the property's poor

7

conditions. More specifically, there is no request for relief in the present case that is fairly viewed as parallel to the relief sought or obtainable by the City in the code enforcement case. And looking at matters more broadly, the state court case will end once the property is in compliance with the Chicago building code; the present case won't. In sum, if the cases are considered parallel under *Colorado River*, they are just barely so.

Even if one considers the two cases to be parallel within the meaning of *Colorado River*, the existence of parallel litigation does not, by itself, call for a stay; a federal court has a "virtually unflagging obligation" to exercise its jurisdiction. *Colorado River*, 424 U.S. at 817. Based on the Supreme Court's guidance in *Colorado River* and in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 23-27 (1983), the Seventh Circuit has identified ten factors to consider in deciding whether a stay of a federal case is warranted when there is parallel litigation in another court. They are:

> 1) whether the [other court] has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the current forums; 5) the source of governing law, state or federal; 6) the adequacy of [other] action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 755. In determining whether exceptional circumstances exist, there remains a "general presumption against abstention." *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003).

    1.     The state court has "jurisdiction" over the property to the extent of

requiring necessary repairs.  But this is not a situation in which there are separate lawsuits concerning the rights to a particular *res*.  And as noted in the previous section of this decision, if this case gets to a point where some form of injunctive relief concerning remediation is sought, the Court will be able to, on a focused basis, prevent any inappropriate interference with remedial action undertaken under the auspices of the state court.

2.  A federal forum is not in the least bit inconvenient.  Indeed, *defendants chose federal court* by removing several plaintiffs' state court cases to this Court.

3.  Avoiding piecemeal litigation is of course desirable, but having separate lawsuits is unavoidable here:  monetary relief, the primary relief sought in the present case, is not available in the code enforcement action pending in the Circuit Court's Housing Section.

4.  The state court case has been pending far longer than the present matter.

5.  Most of the plaintiffs' claims here are governed by state law.  But again, *defendants chose this forum* by removing several plaintiffs' cases from state court.  And Congress specified that litigation involving Freddie Mac is deemed to arise under federal law.  In addition, the plaintiffs' disability discrimination claims are brought under federal statutes.

6.  The code enforcement proceeding is not adequate to protect the federal plaintiffs' rights.  Among other things, monetary relief, and relief against eviction proceedings, are not available in the code enforcement case.

7.  The Court cannot discern from the record exactly how far along the state court case is, but it is fair to say that it has progressed significantly further toward

9

conclusion than the present case.

8.      It is likely that the state courts have concurrent jurisdiction over most, if not all, of the plaintiffs claims.  But again, the defendants *affirmatively chose* a federal forum via removal of certain plaintiffs' cases, and Congress specified that actions involving Freddie Mac are deemed to arise under federal law.

9.      There is no basis for removal to federal court of the state court building code enforcement case.

10.      Defendants contend that the plaintiffs' claims in this case are vexatious or contrived, but that is a hard sell.  Defendants cite plaintiffs' attorneys' pre-suit threat to file suit unless the plaintiffs (or, perhaps, the tenant association) were permitted to weigh in on Freddie Mac's efforts to sell the property.  It is difficult for the Court to see how what may be alternatively characterized as an attempt to ensure that the apartment complex in which the plaintiffs live ends up in good hands makes the lawsuit "contrived" or "vexatious."  If nothing else, the fact that the building has been in code enforcement proceedings in state court for four years is a relatively good indication that there are legitimate problems that underly the plaintiffs' suit.

Considering these factors—predominantly the absence of a monetary remedy for the plaintiffs in the state court proceeding and the defendants' choice of a federal forum via removal of several plaintiffs' case—the Court concludes that *Colorado River* abstention is inappropriate.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to stay [dkt.

33].

Date:  November 17, 2025

_____
MATTHEW F. KENNELLY
United States District Judge